IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TANYA PARKER-RAMEY, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>    Defendant. ) | Case No. CIV-16-574-JHP-SPS |

## REPORT AND RECOMMENDATION

The claimant Tanya Parker-Ramey requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423(d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 28, 1973, and was forty-one years old at the time of the administrative hearing (Tr. 72). She completed high school and two years of college, and has worked as an office clerk, teacher in child development, sales clerk, cashier checker, inventory clerk, kitchen helper, social services aide, and certified nursing assistant (Tr. 61, 230). The claimant alleges she has been unable to work since April 1, 2013, due to increased seizure activity/epilepsy, diabetes, depression, bipolar disorder, insomnia, stomach ulcer, high blood pressure, high cholesterol, migraines, and extreme pain (Tr. 229).

## Procedural History

On April 30, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Joseph Liken conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated October 28, 2015 (Tr. 52-63). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a wide range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), *i. e.*, she could lift/carry ten pounds occasionally and less than ten pounds frequently, stand/walk two hours in an eight-hour workday, sit six hours in an eight-hour workday. Additionally, he found she was limited to occasionally climbing ramps/stairs, balancing, stooping, bending, squatting, kneeling, crawling, and crouching, and that she should avoid climbing ladders/ropes/scaffolds, exposure to hazards such as unprotected heights, fast moving machinery, sharp objects, and open flames, as well as extreme heat or concentrated exposure to vibration. Finally, he found that she should not be required to handle complex instructions (Tr. 58). The ALJ thus concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, charge account clerk, dowel inspector, and cutter and paster (Tr. 61-62).

**Review**

The claimant contends that the ALJ erred by: (i) failing to identify jobs at step five that were consistent with the assigned RFC, (ii) failing to properly consider her mental impairments in formulating her RFC, and (iii) finding she could work a limited range of sedentary jobs. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of seizure disorder, diabetes, gastric esophageal reflux disease (GERD), coronary artery disease, obesity, and depression (Tr. 54). The medical evidence as to the claimant's mental impairments reflects that she was diagnosed with an adjustment disorder with mixed anxiety and depressed mood back in 2011 (Tr. 308). Additionally, she was treated at the Durant Health Clinic for depression and prescribed medications (Tr. 497). She was again given this diagnosis in January 2013, when she presented with anxiety and depression, as well as mood swings (Tr. 559-561).

As to her physical impairments, she received treatment for convulsions on October 15, 2012, reporting that she was not taking her seizure medications at that time (Tr. 366, 761). That same month, her lab work was described as "out of control" and the nurse practitioner reported concern for her welfare if she did not become compliant with medications (Tr. 762). In June 2013, the Dr. Kevin L. Wood completed a Treating Physician Seizure Description Form regarding the claimant's seizures, in which he stated that the claimant had staring spells and generalized seizures that were sporadic but had been increased since February 2013 (Tr. 503, 875). In his treatment notes later in the record, he theorized that the flare up had likely been due to recent stress (Tr. 538, 819). He ordered an EEG, and results indicated a persistent right temporal spike in sleep and wakefulness (Tr. 550, 554). An MRI of the brain conducted on April 11, 2013 was normal (Tr. 597).

A state reviewing physician found the claimant had no physical exertional limitations, but that she should avoid exposure to all hazards (Tr. 93-04). As to her

mental impairments, a state reviewing physician determined that she was moderately limited in the typical three areas of understanding and remembering detailed instructions, carrying out detailed instructions, and interacting appropriately with the general public (Tr. 95-96). This physician concluded that the claimant could perform simple and some complex tasks with routine supervision, relate to others on a superficial work basis and to a more limited degree with the general public, and can adapt to changes and avoid hazards in a work situation (Tr. 96). Both physicians were affirmed upon reconsideration (Tr. 117-121).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as most of the medical evidence in the record. In particular, the ALJ noted both the claimant's written and oral testimony as to her impairments, particularly her seizures, as well as statements submitted by the claimant's husband regarding her seizures (Tr. 58). He further noted her hospital treatment for seizures in 2013, but that her brain MRI, EKG, and EEG were all essentially normal; that her diabetes was managed by medication therapy; that her GERD appeared to be relatively well-controlled by medication as well; and that her recently-diagnosed coronary artery disease was not debilitating, and that she persisted in smoking cigarettes despite being told to cease using tobacco (Tr. 59-60). He further noted that the claimant's failure to take medications, particularly as to her diabetes, raised an inference that her symptoms were not as severe as alleged (Tr. 59). He further considered the combined effects of her obesity, finding that it supported a finding of sedentary work for standing and walking (Tr. 60). Additionally, he found that the claimant's reports regarding her mental impairments were in contrast to the record of

treatment, which was sparse and contained no inpatient hospitalization nor even consistent outpatient treatment (Tr. 60). Finally, the ALJ noted that only standard seizure precautions had been placed on the claimant by her physicians (Tr. 61). The ALJ then concluded that the claimant was not disabled.

The claimant first asserts that the ALJ erred in identifying jobs she can perform at step five because (i) the job of charge account clerk requires too much level of detail, (ii) the job of cutter and paster involves the use of sharp objects, and (iii) the job of dowel inspector involves the use of sharp or vibrating hand tools and being around moving machinery or assembly line environments that involve vibration. "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Here, the "charge account clerk" position, DICOT § 205.367-014, has a reasoning level of 3, which required an individual to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." This is a conflict with the RFC finding that the claimant should not be required to handle complex instructions. Additionally, the "cutter and paster" position, DICOT § 249.587-0147, has a job description in which the definition requires "using knife or scissors," in direct contravention of the RFC

-7-

requirement that the claimant should avoid sharp objects. Thus, neither of these two jobs conforms to the claimant's RFC. However, the job of "dowel inspector," DICOT § 669.687-014, contains no such conflict. The claimant asserts that the job will involve the use of sharp or vibrating hand tools, as well as being around moving machinery and assembly line environments involving vibration, but the Dictionary of Occupational Titles description indicates that vibration and moving mechanical parts are not present. As such, this job is not in conflict with the claimant's RFC. Accordingly, the errors identified with the other two jobs are classified as harmless error, because there is a still a job the claimant can perform. *See, e. g., Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding any error on whether claimant could perform job was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

Second, the claimant asserts that the ALJ failed to properly account for her mental impairments because a limitation that she should not be required to handle complex instructions, construed by the claimant as a limitation to simple work, did not adequately account for the ALJ's step three finding that she had moderate difficulties in maintaining concentration, persistence, or pace. She further asks the Court to recognize a marked impairment in understanding, remembering, and carrying out complex and detailed instructions, but points to nothing in the record to support such a finding. She appears to assert that the ALJ's step three finding required him to express work-related functional limitations related to this moderate limitation. But this is not a case where an examining

-8-

physician whose opinion had been given weight had propounded limitations that the ALJ did not address. *Cf. Jaramillo v. Colvin*, 576 Fed. Appx. 870, 872 (10th Cir. 2014). In *this* case, the ALJ found at step three that the claimant had mild restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace, with no episodes of decompensation (Tr. 57). At step four, the ALJ gave significant weight to the opinions of the state reviewing psychologists (Tr. 61), and further found that the claimant should not be required to handle complex work. The Tenth Circuit has stated that an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015). Although "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations," *Id.*, at 1204, the undersigned Magistrate Judge finds here that the RFC limitations adequately accounted for her moderate limitations.

As part of her step four argument, the claimant also contends that the ALJ failed to account for her depression and seizure disorder in the RFC. Despite this claim, the undersigned Magistrate Judge finds that the ALJ did not commit any error in his analysis. He noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, including the MRI, EKG, and EEG findings, as well as only standard seizure precautions being imposed by her treating physicians and her limited history of mental health treatment in the record (Tr. 58-61). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). The ALJ's treatment of the medical evidence in this case meets these standards. When all the evidence is taken into account, the conclusion that the claimant could perform light work is thus supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Finally, the claimant contends that the ALJ failed to reflect a consideration of Soc. Sec. Rul. 96-9p, which states, in part, that "[a]n RFC for less than the full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *1 (July 2, 1996). She contends that the ALJ should have explained why he failed to overcome what she termed as a "rare presumption." However, this argument, which does not point to case law finding this to be a presumption, ignores the follow-up statement in Soc. Sec. Rul. 96-9p, which states, "However, a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.'" *Id.* As such, the ALJ went through the proper analysis in

-10-

evaluating the claimant's RFC to determine what she could do in light of all of her impairments.

The ALJ considered the entire record, *and still concluded* that she could work. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. *See also Corber*, 20 Fed. Appx. at 822 ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. Essentially, the claimant asks the Court to reweigh the evidence in the record, which the undersigned Magistrate Judge cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

-12-

**DATED** this 9th day of February, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**